No. 25-____

_____

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

IN RE SAP AMERICA, INC.; SAP SE

*Petitioners,*

_____

On Petition for a Writ of Mandamus from the
U.S. District Court for the Eastern District of Texas
Case No. 2:24-cv-21 | Hon. J. Rodney Gilstrap

_____

## NON-CONFIDENTIAL PETITION FOR A WRIT OF MANDAMUS

_____

Katherine K. Vidal
WINSTON & STRAWN LLP
255 Shoreline Drive
Suite 250
Redwood City, CA 94065
(650) 858 -6500
KVidal@winston.com

Sean H. Suber
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
SSuber@winston.com

Thomas M. Melsheimer
M. Brett Johnson
Michael A. Bittner
Thanh D. Nguyen
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
TMelsheimer@winston.com
MBJohnson@winston.com
MBittner@winston.com
TDNguyen@winston.com

*Counsel for Petitioners*
*SAP America, Inc. and SAP SE*

February 4, 2025

# CERTIFICATE OF INTEREST

Counsel for SAP certifies the following:

1.  The full names of all entities represented by me in this case are:

    **SAP America, Inc.** and **SAP SE**

2.  The full names of all real parties in interest for the entities represented by me are:

    **None**

3.  The full names of all parent corporations and all publicly held companies that own 10% or more of stock in the entities represented by me are:

    **SAP America, Inc.** is a wholly owned subsidiary of **SAP SE**, which is a publicly traded company. **No publicly held company** owns 10% or more of the stock of **SAP SE**

4.  The names of all law firms and the partners or associates that appeared for the parties now represented by me before the originating court or that are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

    **Winson & Strawn LLP**: Katherine K. Vidal, Michael A. Bittner, M. Brett Johnson, Sean H. Suber, Patrick D. Clark, Samuel Riebe, Thanh D. Nguyen, Thomas M. Melsheimer

    **Gish PLLC**: Andrew D. Gish and Josef B. Schenker

5.  The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal is:

    *Valtrus Innovations, Ltd.* and *Key Patent Innovations, Ltd. v. SAP America, Inc.* and *SAP SE*, No. 2:24-cv-533 (E.D. Tex.)

*SAP America, Inc. v. Valtrus Innovations, Ltd., Key Patent Innovations, Ltd. and Patent Platform Services, LLC,* No. 1:24-cv-756 (D. Del.)

6.    Information required by Rule 26.1(b) and (c) of the Federal Rule of Appellate Procedure, which identifies victims in criminal cases and trustees in bankruptcy cases.

**Not Applicable**

Dated: February 4, 2025              Respectfully submitted,

By:  */s/ Katherine K. Vidal*
        Katherine K. Vidal

        *Counsel for Petitioners*
        *SAP America, Inc. and SAP SE*

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................. 1

Jurisdictional Statement ............................................................... 5

Statement of the Issue ................................................................. 6

Statement of the Case and Facts ................................................. 6

I.   Overview of the Parties and Underlying Dispute ................. 6

　A.   The SAP Petitioners are multinational with a
　　presence in the Sherman Division. ............................... 6

　B.   Plaintiff Valtrus is an international licensing
　　company with a presence in the Sherman
　　Division through its agent, Patent Platform
　　Services ("PPS"). ........................................................ 7

　C.   SAP and Valtrus (through PPS) have pre-suit
　　negotiations for a year in the Sherman Division
　　before Valtrus files this case in the Marshall
　　Division. ..................................................................... 7

II.   The Record for SAP's Motion to Transfer ......................... 8

　A.   Valtrus has no connection to the Marshall
　　Division. ..................................................................... 8

　B.   SAP has no connection to the Marshall Division. ......... 9

　C.   Both parties have connections to the Sherman
　　Division. ..................................................................... 9

　D.   Both parties' documents also can be *accessed*
　　from the Sherman Division. ....................................... 10

III.   SAP Files its Motion to Transfer, which the District
　　Court Denies After a Nearly Nine-Month Delay ................ 10

　A.   SAP files its Motion to Transfer. ............................... 10

B.    The district court takes nearly nine months to resolve the Motion to Transfer and ignores SAP's Motion to Stay. ............................................................ 11

C.    In denying SAP's Motion to Transfer, the district court relies on circumstances that arose from the delay. ........................................................................... 12

Standard of Review ................................................................ 13

Reasons Why The Writ Should Issue ...................................... 14

I.    The district court clearly abused its discretion by not transferring this case to the Sherman Division given the lack of any connection to the Marshall Division. ........... 14

II.    The district court abused its discretion by not ruling on SAP's Motion to Transfer for months and then denying transfer solely due to judicial efficiency and court congestion. ............................................................... 17

A.    The court overstated the "potential future efficiencies" of a co-pending case that was dismissed while the Motion to Transfer was pending. ..................................................................... 18

B.    The court did not prioritize the Motion to Transfer as required and then erroneously retained the case because the case was "smoothly proceeding to trial." .................................................... 20

C.    The court improperly tipped the balance against transfer by relying exclusively on the existence of a co-pending case and court congestion. ...................... 22

III.    The district court abused its discretion by overlooking the relative ease of access to proof and downplaying the inconvenience to SAP's witnesses. ....................................... 24

A.    The court ignored SAP's witnesses and improperly focused on the absolute ease of access

to proof as opposed to the *relative* ease of access, as required....................................................................24

B.    The court legally erred in finding that SAP's witnesses in the Sherman Division were "irrelevant" because they were not witnesses "for trial."...........................................................................30

C.    The court erred in refusing to give "too much significance'" to the inconvenience faced by the bulk of relevant witnesses in from Europe..................33

Conclusion and Relief Sought .................................................................35

## CONFIDENTIAL INFORMATION OMITTED

The material omitted from page 25 of this Petition contains confidential information filed under seal with the district court in accordance with the Stipulated Protective Order in this case. Appx000iii. That information includes confidential business information, including employee knowledge of the support and operation of products.

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ........................................................ 13

*In re Apple Inc.*,
   No. 2022-128, 2022 WL 1196768
   (Fed. Cir. Apr. 22, 2022) .................................................. 4, 20, 28, 29

*In re Chamber of Com. of United States of Am.*,
   105 F.4th 297 (5th Cir. 2024) ......................................................... 23

*Cheney v. U.S. Dist. Ct.*,
   542 U.S. 367 (2004) ........................................................................ 13

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) ................................................ 24, 31, 32

*In re Google LLC*,
   No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) .............. 28

*In re Greentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ....................................................... 23

*In re Haptic, Inc.*,
   No. 2024-121, 2024 WL 3159288 (Fed. Cir. June 25, 2024) ............. 31

*In re Honeywell Int'l Inc.*,
   No. 2023-152, 2024 WL 302397 (Fed. Cir. Jan. 26, 2024) ................ 17

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021) .................................................. 28, 29

*La Day v. City of Lumberton*,
   2012 WL 928352 (E.D. Tex. Mar. 19, 2012 ...................................... 15

*In re Microsoft Corp.*,
   No. 2023-128, 2023 WL 3861078
   (Fed. Cir. June 7, 2023) ............................................................. *passim*

*In re NetScout Sys., Inc.*,
   2021 WL 4771756 (Fed. Cir. Oct. 13, 2021) ................................. 18, 23

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013)...................................................... *passim*

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ...................................................... *passim*

*In re Toyota Motor Corp.*,
   747 F.3d 1338 (Fed. Cir. 2014) .......................................................... 29

*In re TS Tech. USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) .......................................................5, 13

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008)......................................................... 4, 31

## Statutes

28 U.S.C. § 1295(a)(2)..........................................................................5

28 U.S.C. § 1404(a) ...................................................................... *passim*

## Other Authorities

Fed. R. Civ. P. 26, Advisory Comm. Notes 1993 Amend. ........................ 32

Fed. R. Civ. P. 26(a)(1) ....................................................................... 32

Fed. R. Civ. P. 26(g)(1) ....................................................................... 32

John G. Roberts, 2021 YEAR-END REPORT ON THE FEDERAL
   JUDICIARY 5 (2021), perma.cc/Q9ZJ-2YFF ............................................5

Judicial Conference of the U.S., *Conference Acts to Promote
   Random Case Assignment* (Mar. 12, 2024),
   perma.cc/CBQ2-UAJT .........................................................................5

## INTRODUCTION

The district court directly contravened binding law when denying SAP's Motion to Transfer this case to the Sherman Division of the Eastern District of Texas because the only thing connecting this case to the Marshall Division was Plaintiff's decision to file suit there. If not remedied, the district court's decision will exacerbate judge-shopping and the concentration of patent cases in single-judge divisions, leading to more mandamus petitions like this one. Mandamus relief is needed now.

Nothing connects this case to the Marshall Division. This suit involves an Irish plaintiff accusing a German defendant and its U.S. subsidiary of infringing U.S. patents for products that were designed and developed by teams primarily in Germany and India (with a few team members in California). It is undisputed that no party has any offices, relevant witnesses, documents, or evidence in the Marshall Division.

Meanwhile, as the district court found, the Sherman Division *does* have an interest in this case because SAP "ha[s] offices in the Sherman [Division] and 'potential jurors in the Sherman Division have a greater interest in adjudicating the rights of businesses that have a material physical presence in their immediate community.'" Appx0012.

Even though the Sherman Division was the only proposed forum with a connection to the case, the district court did not rule on SAP's Motion to Transfer for nearly nine months—and then impermissibly relied on intervening circumstances caused by the nine months to deny the motion. That was a significant abuse of discretion given the established law on transfer under 28 U.S.C. § 1404(a).

I.     The district court abused its discretion because when, as here, the "only thing connecting [a] case to" a particular district is a plaintiff's "decision to file suit there," then a "district court's decision to retain th[e] case and deny [a defendant]'s motion to transfer [i]s a '*clear abuse of discretion*' leading to a 'patently erroneous result.'" *In re TikTok, Inc.*, 85 F.4th 352, 366 (5th Cir. 2023) (emphasis added) (citation omitted). This principle applies equally to transfers between judicial divisions. *See In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (transfer to the Tyler Division was "compelled" because a case had "no connection" to the Marshall Division). This Court's analysis can end here.

II.     The district court further abused its discretion by incorrectly finding that factors (4) and (5) (practical problems and court congestion) of the § 1404(a) analysis weighed against transfer and then using those

factors as the sole bases to deny transfer. Appx0010. The district court did not rule on the transfer motion for nearly nine months and then relied on events that took place while the Motion was pending as the sole basis for denial. Appx0001; Appx0097. This was a clear abuse of discretion because the Fifth Circuit has held that a district court that takes "an excessively long time" to rule on a transfer motion "cannot then turn around" and "punish the moving party" by relying on post-motion events "as a reason to deny transfer." *TikTok*, 85 F.4th at 362–63. Indeed, the Fifth Circuit warned that "[i]f we were to hold that this is a proper exercise of discretion, a district court would have absolute control over whether these two factors weighed in favor of transfer," which "is inconsistent with the principles underlying § 1404(a)." *Id.* at 364 n.13.

III.    Finally, the district court abused its discretion in finding that factors (1) and (3) (relative ease of access to proof and cost of attendance for willing witnesses) were neutral. Appx0005; Appx0009. First, the district court erred by relying on the absolute access to electronic data rather than the "*relative* ease of access." *TikTok*, 85 F.4th at 358. Because the Marshall Division has "nothing on the other side of the ledger" for accessing evidence, the Sherman Division had "a comparative advantage

with regard to the ease of access to the sources of proof located within that district." *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). Second, the court erroneously found that SAP's witnesses in the Sherman Division were "irrelevant" because they were not designated "*for trial.*" Appx0008. Witnesses need not be designated for trial to be relevant; the focus is on "potential witnesses" with potentially relevant information. *See, e.g.*, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008). Last, the court erred by finding that the Sherman Division was not more convenient because witnesses outside of the Sherman Division could "fly to the Shreveport airport" and "drive to the Marshall Division." Appx0009. But the court did not account for the additional distance that witnesses will have to drive to get to the Marshall Division from the Shreveport airport—in contravention of the Fifth Circuit's rule that "the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *TikTok*, 85 F.4th at 361 (citation omitted).

\* \* \*

Because the district court's ruling led to a patently erroneous result, the Court should issue a writ of mandamus directing transfer to

– 4 –

the Sherman Division. And to discourage gamesmanship by plaintiffs, the Court should also direct that a judicial officer in the Sherman Division be randomly assigned to the case as though it had been originally filed there. Plaintiffs have been gaming the system and judge-shopping in Texas for years, using "case assignment procedures . . . to select a division of a district court" and to "enable the plaintiff to select a particular judge to hear a case." John G. Roberts, 2021 YEAR-END REPORT ON THE FEDERAL JUDICIARY 5 (2021), perma.cc/Q9ZJ-2YFF. That is why "the Judicial Conference of the United States has strengthened the policy governing random case assignment, limiting the ability of litigants to effectively choose judges in certain cases by where they file a lawsuit" due to "concerns about a concentration of patent cases filed in single-judge divisions." Judicial Conference of the U.S., *Conference Acts to Promote Random Case Assignment* (Mar. 12, 2024), perma.cc/CBQ2-UAJT. Granting the relief outlined above will address these concerns.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction under 28 U.S.C. § 1295(a)(2). Mandamus is available to correct a clear abuse of discretion. *See In re TS Tech. USA Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008). And given the early posture

– 5 –

of this case (SAP filed its Answer to the Amended Complaint at the end of November (Appx0084) and the district court is reconsidering SAP's motion to dismiss (Appx0913)), this Petition is timely. *See In re Microsoft Corp.*, No. 2023-128, 2023 WL 3861078, at *1 n.* (Fed. Cir. June 7, 2023) (69 days between transfer decision and mandamus petition was not "substantial and prejudicial" as to warrant denying petition).

## STATEMENT OF THE ISSUE

Did the district court clearly abuse its discretion by not transferring this case to the Sherman Division of the Eastern District of Texas—the only division with connections to the case and the division used to establish venue?

## STATEMENT OF THE CASE AND FACTS

### I. Overview of the Parties and Underlying Dispute

#### A. The SAP Petitioners are multinational with a presence in the Sherman Division.

The SAP Petitioners are two entities, SAP SE and SAP America (collectively, "SAP"). SAP SE is incorporated and headquartered in Germany. Appx0103. SAP America is a wholly owned subsidiary of SAP SE and a Delaware corporation with its principal place of business in

Pennsylvania. *Id.* SAP America owns and operates offices in the Sherman

Division in Plano and Allen, Texas. *Id.*

> **B.    Plaintiff Valtrus is an international licensing company with a presence in the Sherman Division through its agent, Patent Platform Services ("PPS").**

Plaintiffs Valtrus Innovations Ltd. and its parent, Key Patent

Innovations, Inc. (collectively "Valtrus"), are incorporated and

headquartered in Ireland. Appx0582. Valtrus is a patent licensing

company, and its licensing agent is Patent Platform Services ("PPS").

Appx0583. PPS is organized in Delaware with its principal place of

business in the Sherman Division in Frisco, Texas. Appx0579. Valtrus

says it owns a portfolio of patents that were invented and developed by

Hewlett Packard Enterprise ("HPE"), which also has an office in the

Sherman Division in Frisco. Appx0187; Appx0583.

> **C.    SAP and Valtrus (through PPS) have pre-suit negotiations for a year in the Sherman Division before Valtrus files this case in the Marshall Division.**

In October 2022, the parties conferred about Valtrus's belief that

SAP was infringing Valtrus's patents. Appx0536. The primary point of

contact for these negotiations from October 2022 into January 2024 was

PPS's Founder and EVP, Kapu Kumar, acting as an agent on behalf of

Valtrus. Appx0127; Appx0536; Appx0538. Kumar resides in the Sherman Division in Aubrey, Texas. Appx0538. After the parties' pre-suit negotiations in the Sherman Division ended, Valtrus sued SAP in the Marshall Division on January 15, 2024, alleging that five of SAP's products infringe seven asserted patents. Appx0038–0048.

## II.    The Record for SAP's Motion to Transfer

### A.    Valtrus has no connection to the Marshall Division.

Although Valtrus filed this case in the Marshall Division, its Complaint alleges no connections to the Marshall Division. Appx0033–0048. Because there are none. As discussed, Valtrus is headquartered in Ireland, and it was undisputed after venue discovery that neither Valtrus, KPI, nor PPS own any property or equipment, conduct any operations, lease any office space, or store or maintain any documents in the Marshall Division. Appx0104–0105 (identifying ties to only the Sherman Division); Appx0558–0572 (discussing proximity to the Marshall Division but nothing about an actual presence in the Marshall Division). It was also undisputed that none of the evidence Valtrus would produce was in the Marshall Division and that Valtrus had no witnesses in the Marshall Division. *See id.* It was further undisputed that Valtrus's

documents could not be accessed in the Marshall Division because it had no offices or presence there. Appx0583. Any such documents would have to be brought in from witnesses outside of Marshall. *Id.*

### B.   SAP has no connection to the Marshall Division.

Valtrus's complaint also alleged no connection between SAP and the Marshall Division. Appx0033–0048. Again, there is none. SAP does not own any property or equipment, conduct any operations, lease any office space, or store or maintain any documents in the Marshall Division. Appx0127–0130. None of the evidence SAP expects to produce is located in the Marshall Division. *Id.* It is undisputed that SAP has no witnesses in the Marshall Division. *Id.* And because SAP also has no presence in the Marshall Division, it is also undisputed that SAP's documents cannot be accessed there and would have to be brought in from witnesses outside the Marshall Division—either from SAP's witnesses and employees in the Sherman Division (discussed below) or from SAP's witnesses in Germany, India, or California. *Id.*

### C.   Both parties have connections to the Sherman Division.

Discovery showed that both SAP and Valtrus had connections to the Sherman Division. SAP identified two employees who reside in the

Sherman Division as potential witnesses, Tumu and Padakal, both with relevant knowledge concerning the accused products. Appx0129–0130.

### D. Both parties' documents also can be *accessed* from the Sherman Division.

SAP also established that the overwhelming majority of its documents relevant to infringement, invalidity, and damages could be accessed out of its two offices in the Sherman Division. Appx0127. Indeed, during the pre-suit negotiations, *both parties* frequently accessed SAP's documents to negotiate in the Sherman Division. Appx0538–0539. Acting on Valtrus's behalf, Kumar of PPS routinely communicated with SAP regarding, for example, infringement and invalidity of, valuation of, and offers to license Valtrus's asserted patents. Appx0127; Appx0539. Thus, Valtrus, through PPS, *also* has access to relevant documents in the Sherman Division. Appx0538–0539.

## III. SAP Files its Motion to Transfer, which the District Court Denies After a Nearly Nine-Month Delay

### A. SAP files its Motion to Transfer.

In light of the above, SAP filed its Motion to Transfer shortly after this case was filed, seeking transfer to the Sherman Division because the dispute originated there and the majority of relevant witnesses and

evidence for both parties were located there. Appx0102. SAP noted that all the relevant factors for transferring the case either favored transfer or were neutral; *none* favored Valtrus's chosen venue. Appx0116. Fifth Circuit precedent mandated that the case be transferred because "the facts and circumstances of this case are wholly grounded in the transferee forum (the [Sherman] Division), which is a clearly more convenient venue, and this case has no connection to the Marshall Division." *Id.* (citing *Radmax*, 720 F.3d at 290).

### B. The district court takes nearly nine months to resolve the Motion to Transfer and ignores SAP's Motion to Stay.

The Motion to Transfer was the first substantive filing in the case, but the district court did not rule on it for nearly nine months. SAP filed its Motion to Transfer on March 20, 2024, right before it filed its original Answer and Counterclaims. Appx0117; Appx0051. Following venue discovery, the Motion to Transfer was fully briefed by June 20, 2024. Appx0542; Appx0857. Yet the district court did not rule on the Motion until December 13, 2024—about six months after the motion was fully briefed, and nearly ninth months after it was filed. Appx0001.

This was double the time it took the court to rule on SAP's Motion to Dismiss, which was filed after the briefing on the Motion to Transfer

and which the district court decided just two months after briefing was complete, on November 8, 2024. Appx0029; Appx0859; Appx0897.

It is unclear why the district court ruled on the Motion to Dismiss an entire month *before* ruling on the Motion to Transfer. SAP moved to stay discovery, emphasizing that "once a party files a transfer motion, disposing of that motion should unquestionably take a top priority," and that "under Federal Circuit authority, [the] court[] should decide transfer before expending significant resources in the interest of judicial economy." Appx0889 (citation omitted).

### C.    In denying SAP's Motion to Transfer, the district court relies on circumstances that arose from the delay.

After its long delay, the district court denied SAP's Motion to Transfer on the basis that retaining the case would be in the interest of judicial economy and court congestion. Appx0010–0011. As for the remaining six factors, the court found that five were neutral and one weighed in favor of transfer. It found that the relative ease of access to proof was neutral because evidence was equally available to both parties—even though it was undisputed that the evidence could not be accessed from the Marshall Division and could be accessed from the Sherman Division. Appx0004–0005. The court also found that the cost of

attendance for willing witnesses was neutral, asserting that the witnesses SAP identified in the Sherman Division were "irrelevant" because SAP did not say that they would be witnesses "for trial." Appx0008. The only factor the court found weighed in favor of transfer was SAP's physical presence in the Sherman Division. Appx0012.

## STANDARD OF REVIEW

Mandamus relief is available to "correct a clear abuse of discretion or usurpation of judicial power." *TS Tech*, 551 F.3d at 1318. It is warranted when (1) the petitioner's "right to issuance of the writ is 'clear and indisputable'"; (2) there are "no other adequate means to attain the relief [that the petitioner] desires"; and (3) the "writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–81 (2004) (citations omitted). When a mandamus petition challenges a refusal to transfer under § 1404(a), however, this test "reduces to the first factor" because an appeal after a final judgment is an inadequate alternative and an erroneous failure to transfer may result in irreparable procedural injury. *See In re Apple Inc.*, 979 F.3d 1332, 1336–37 (Fed. Cir. 2020).

"Because this petition does not involve substantive issues of patent law, this court applies the laws of the regional circuit in which the district

– 13 –

court sits, in this case the Fifth Circuit." *TS Tech*, 551 F.3d at 1319. And in the Fifth Circuit, a "district court should grant a motion to transfer venue under § 1404(a) where 'the movant demonstrates that the transferee venue is clearly more convenient,' taking into consideration" eight factors. *See TikTok*, 85 F.4th at 358 (citation omitted).

### REASONS WHY THE WRIT SHOULD ISSUE

This Petition satisfies the standard for relief because it is undisputed that the "only thing connecting this case to" the Marshall Division is plaintiff's "decision to file suit there." *TikTok*, 85 F.4th at 366 (quoting *Radmax,* 720 F.3d at 290). Once the district court's legal errors are corrected, three factors weigh in favor of transfer and the remaining five are neutral. Because "not one single factor weighs in favor of refusing transfer," the district court clearly abused its discretion. *Id.* at 367. Thus, SAP has a clear and indisputable right to mandamus relief.

**I.    The district court clearly abused its discretion by not transferring this case to the Sherman Division given the lack of any connection to the Marshall Division.**

The "only thing connecting this case to" the Marshall Division is the plaintiff's "decision to file suit there." *Id.* at 366. In such circumstances, Fifth Circuit precedent is clear that denying a motion to transfer is a

clear abuse of discretion and "patently erroneous." *Id.* (quoting *Radmax,* 720 F.3d at 290). Of note, the Fifth Circuit once commended the district judge here for transferring a case from the Marshall Division to the Tyler Division, recognizing that "[t]ransfer is appropriate where none of the operative facts occurred in the division [of plaintiff's choice] and where the division had no particular local interest in the outcome of the case." *Radmax*, 720 F.3d at 287 n.1 (quoting *La Day v. City of Lumberton*, No. 2:11-cv-237, 2012 WL 928352, at *3 (E.D. Tex. Mar. 19, 2012) (Gilstrap, J.)). The same should have happened here.

Indeed, this is true *even if this Court credits the District Court's analysis under § 1404(a)*. That is, while the district court found (albeit erroneously, as discussed below) that factors relating primarily to the convenience of the court (judicial economy and court congestion) weighed against transfer, it found that the remaining six factors—those requiring some underlying connection between the parties and the venue—were either neutral or (for one factor) favored transfer. Appx0005–0009; Appx0011–0012. Specifically, the court found that factor (6) (the local interest in having localized interests decided at home) "slightly favors transfer because Defendants [] have offices in the Sherman District and

'potential jurors in the Sherman Division have a greater interest in adjudicating the rights of businesses that have a material physical presence in their immediate community.'" Appx0012.

Taken together, the district court's findings reflect that the Sherman Division has a local interest in the case based on SAP's physical presence there. Meanwhile, no *party* had *any* connection to the Marshall Division. As discussed, neither party owns any property or equipment, conducts any operations, leases any office space, or stores or maintains any documents in the Marshall Division. Appx0104–0105; Appx0558–0572. Likewise, it was undisputed that none of the evidence that either party would produce was located in the Marshall Division and that neither party has any witnesses in the Marshall Division. *Id.*

Given this lack of any connection to the Marshall Division and the recognized connection to the Sherman Division, the district court had to transfer the case. Just as in *TikTok*, the Marshall Division "contains no relevant evidence," has no "relevant witnesses," and "is wholly unconnected to the underlying dispute." *TikTok*, 85 F.4th at 366.

This Court recently reiterated these principles when granting a writ of mandamus, relying on "*TikTok* and other recent cases in which

this court and the Fifth Circuit have granted mandamus." *In re Honeywell Int'l Inc.*, No. 2023-152, 2024 WL 302397, at *1, *3 (Fed. Cir. Jan. 26, 2024). In *Honeywell*, despite the district court's finding that "the willing witness and practical problem factors" favored denying transfer, this Court still granted the writ and ordered transfer because the record was "clear that the only connection between th[e] case and the Western District of Texas is that it appears that [Plaintiff] prefers to file its suits there." *Id.* at *2. The same is true here, even crediting the district court's analysis. For that reason alone, the result should be the same.

## II. The district court abused its discretion by not ruling on SAP's Motion to Transfer for months and then denying transfer solely due to judicial efficiency and court congestion.

The district court also abused its discretion in finding that the two court-convenience factors (practical problems and court congestion) weighed against transfer when, at best, they were neutral. After not ruling on SAP's Motion to Transfer for nearly nine months, the district court then relied on the potential efficiencies and case progress made *after* SAP filed its § 1404(a) motion in denying transfer. That was an abuse of discretion.

– 17 –

The Fifth Circuit addressed similar "unusual circumstances" surrounding a delay in ruling on a motion to transfer, warning that "[i]f we were to hold that this is a proper exercise of discretion, a district court would have absolute control over whether these two factors weighed in favor of transfer," which "is inconsistent with the principles underlying § 1404(a) and not mandated by any of our cases." *TikTok*, 85 F.4th at 364 n.13. So too here.

And even if these court-convenience factors *did* weigh against transfer, this Court has recognized that the potential benefits to judicial economy and administrative benefits due to court congestion cannot be used to automatically outweigh the other § 1404(a) factors when those other factors "weigh in favor of transfer or are neutral." *In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021).

The Court should apply the same principles here.

## A.    The court overstated the "potential future efficiencies" of a co-pending case that was dismissed while the Motion to Transfer was pending.

Start with factor (4): "practical problems that make trial of a case easy, expeditious and inexpensive." *TikTok*, 85 F.4th at 362. The district court found that practical problems weighed against transfer because it

speculated that there could have been "potential future efficiencies achieved with keeping this case" given that, "at the time the Motion to Transfer was filed, Plaintiff had filed a co-pending case." Appx0010. But it ignored the fact that, while the Motion to Transfer was pending, the co-pending case was dismissed. *Id.*

This analysis and these findings were contradictory, incorrect, and a plain abuse of discretion under the specific facts of this case.

The district court improperly speculated about the "*potential future efficiencies*" from a co-pending case. *Id.* (emphasis added). There was no basis to find such efficiencies were likely—either when the Motion to Transfer was filed or when it was decided. Indeed, the district court acknowledged it "had not considered substantive filings in [the co-pending case] by the time the Motion to Transfer had been filed." *Id.* This was error. This error was then exacerbated because when the district court finally decided the Motion to Transfer, it knew beyond doubt that there were no efficiencies to be gained from the co-pending cases. This was because the co-pending case was *closed* by the time of the decision. *Id.* The district court's finding that "precedent require[d]" it to consider

that a dismissed case provided sufficient efficiencies to require retaining a case with no connection to the Marshall Division (*id.*) was unfounded.

Contrary to the court's finding, the Fifth Circuit has declined to create "a *per se* limitation on a district court's ability to consider post-motion events when assessing this factor"—opting instead to focus on "the specific circumstances of [a] case." *TikTok*, 85 F.4th at 363 n.10. At a minimum, this Court should find that, by speculating about potential efficiencies from a previously dismissed co-pending case, "the district court appears to have overstated the concern about waste of judicial resources and risk of inconsistent results in light of [the previously dismissed] co-pending suit." *Apple*, 2022 WL 1196768, at *4.

**B.    The court did not prioritize the Motion to Transfer as required and then erroneously retained the case because the case was "smoothly proceeding to trial."**

The district court also legally erred in its analysis of factor (5): "the administrative difficulties flowing from court congestion." *TikTok*, 85 F.4th at 363. The district court found that court congestion weighed against transfer because "the case was (and continues to be) 'smoothly proceeding' to trial when [SAP] filed the Motion to Transfer." Appx0011. The only justification for this finding was the district court's recognition

– 20 –

that this factor "normally weighs against transfer when the 'case appears
to be timely proceeding to trial.'" *Id.* (citation omitted).

Again, however, this analysis and these findings were incorrect,
and, in these circumstances, an abuse of discretion.

The district court's finding that the case was smoothly proceeding
to trial "when the Motion to Transfer was filed" was inconsistent.
Appx0010. It was contradictory to claim on the one hand that the court
had to ignore the subsequent dismissal of a related case in analyzing
potential efficiencies but then say that it could consider subsequent
developments in this case in considering administrative difficulties.

The district court's finding was also unsupported. The case could
not have been smoothly proceeding to trial when the Motion to Transfer
was filed because *there was no trial date at that time*. The Motion to
Transfer was the first substantive filing. Appx0023–0025. There was no
scheduling order until *after* the Motion to Transfer was filed. Appx0545.

To the extent the court considered post-motion developments, this
is permissible only when it has been shown that the petitioner "had
'inexcusably delayed'" in "filing the § 1404(a) motion." *TikTok*, 85 F.4th
at 364. That's not the case here. This case presents "the exact opposite

situation," in which it "was the district court—not petitioners—that was responsible for the delay." *Id.* In such circumstances, the district court "cannot misuse this factor by pointing to how close the case is to trial when the court finally rules." *Id.*

Given the district court's delay in ruling on the Motion to Transfer, "the district court committed a clear abuse of discretion by determining that this factor weighed against transfer based on case progress made after petitioners filed their § 1404(a) motion." *TikTok*, 85 F.4th at 364.

### C.   The court improperly tipped the balance against transfer by relying exclusively on the existence of a co-pending case and court congestion.

The district court erred in relying exclusively on concerns about judicial economy and benefits *to the courts* to retain the case. The district court's analysis of factors (4) and (5) focused on judicial economy and the administrative difficulties and benefits for the *court*, not the parties. Indeed, the convenience of the parties was never mentioned. The district court's analysis of factor (4) focused entirely on the potential future efficiencies that *the court* could have achieved from a dismissed co-pending case, while the analysis of factor (5) "focuse[d] on 'docket efficiency.'" Appx0011 (citation omitted).

"Courts must not lose sight of the convenience of *parties* when analyzing each factor." *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 306 (5th Cir. 2024). Yet here, neither the Plaintiffs nor the district court provided any explanation how the supposed interest in judicial economy or court congestion were coextensive. Instead, the district court's explanation for retaining the case turned solely on its court-centric analysis of factors (4) and (5), while it acknowledged that five of the other "factors weigh neutrally . . . and the remaining factor weighs slightly in favor of transfer." Appx0013. This was error.

*Netscout* is illustrative. There, although recognizing that "judicial economy can serve important ends in a transfer analysis," this Court noted that it has "rejected as a general proposition that the mere co-pendency of infringement suits in a particular district automatically tips the balance in the non-movant's favor." 2021 WL 4771756, at *5 (citations omitted). Indeed, judicial economy is "insufficient to outweigh the clear benefits of transfer" with "the other private-interest and public-interest factors." *Id.* Likewise, "when other relevant factors weigh in favor of transfer or are neutral, 'then the speed of the transferee district court should not alone outweigh all of those other factors.'" *Id.* (quoting *In re*

*Greentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)). This is consistent with the Fifth Circuit's emphasis that court congestion, "[b]y itself, . . . is not an appropriate factor on a motion to transfer under Section 1404(a)," as "docket conditions . . . [are] *not decisive.*" *In re Clarke*, 94 F.4th 502, 515 (5th Cir. 2024) (citation omitted).

By retaining this case based solely on factors (4) and (5) when all the remaining factors were either neutral or weighed in favor of transfer, the district court abused its discretion.

### III.    The district court abused its discretion by overlooking the relative ease of access to proof and downplaying the inconvenience to SAP's witnesses.

The errors discussed above were then exacerbated by the district court's erroneous analysis of factors (1) and (3) (the relative ease of access to proof and cost of attendance for willing witnesses). Although the district found these factors to be neutral, in reality, they favored transfer.

#### A.    The court ignored SAP's witnesses and improperly focused on the absolute ease of access to proof as opposed to the *relative* ease of access, as required.

Begin with factor (1): "the relative ease of access to sources of proof." *TikTok*, 85 F.4th at 358. The district court found this factor to be neutral by ignoring SAP's custodians in the Sherman Division and finding that

– 24 –

SAP did "not identify any . . . custodians . . . in the Sherman Division." Appx0004. And it made matters worse by focusing on facts related to the absolute ease of access to electronic evidence—*e.g.*, that SAP (1) did "not dispute that the relevant documents are electronic," (2) "failed to identify any Texas-based servers," and (3) admitted that it "stores and maintains documents relating to the design and development of the Accused Products in Germany and India"—while ignoring the *relative* ease of access between the Sherman and Marshall Divisions. Appx0004.

This analysis was legally erroneous and an abuse of discretion.

The district court's finding that SAP "did not identify any . . . custodians . . . in the Sherman Division" cannot be reconciled with the record. Appx0004. SAP's Motion to Transfer explained that two SAP witnesses with relevant knowledge, Tumu and Padakal, reside in Plano, Texas. Appx0104. Tumu had knowledge about "Commercially Sensitive ▮▮▮▮▮▮▮▮▮▮▮" for the accused products, while Padakal had knowledge of the "Commercially Sensitive ▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* SAP's Head of IP Litigation, Samir Pandya, submitted a sworn declaration affirming that these were witnesses in the Sherman Division with this potentially relevant knowledge. Appx0129. At

deposition, Pandya further testified that SAP identified these witnesses based on conversations and investigations about which employees would have potentially relevant information. Appx0590. Valtrus also deposed Tumu and Padakal, who testified that they knew about this relevant information. Appx0688–0689; Appx0693. And both testified they resided in the Sherman Division. Appx0685; Appx0693.

Yet the district court never mentioned Tumu or Padakal in its discussion of this factor or provided any other basis for its assertion that SAP did not identify custodians in the Sherman Division. Appx0003–0005. This was an abuse of discretion because, though this Court's "review is deferential; it is not a rubber stamp" to approve clear errors unsupported or contradicted by the record. *TikTok*, 85 F.4th at 360.

Working from the errant premise that SAP had no custodians in the Sherman Division, the district court compounded its error by overemphasizing facts related to the absolute ease of access to electronic data overseas without addressing the dispositive question under this factor: the "*relative* ease of access, not *absolute* ease of access." *Id.* at 358 (quoting *Radmax*, 720 F.3d at 288).

The district court did not address the relative ease of access *at all*. Indeed, despite SAP's arguments on this point (Appx0108–0109), the district court never mentioned or analyzed the relative ease of access. All it did was note in passing that "Defendants argue that no documents are located or accessible in the Marshall Division." Appx0003–0004. But that was the last time the Marshall Division was ever mentioned—likely because this fact was undisputed.

Rather than focusing on the Marshall Division's lack of evidence and access to evidence, the district court focused on the *absolute* ease of access to evidence by emphasizing that evidence was electronic and could be "stored or accessed from Germany and India," which was seemingly the court's sole basis for finding this factor weighed neutrally. Appx0005.

This was error. For example, the district court relied on the fact that SAP did "not dispute that the relevant documents are electronic." Appx0004. But the mere fact that evidence is electronic does *not* render this factor neutral. At most, the rule is that the equal availability of access to electronic documents can "bear[] *less* strongly on the transfer analysis." *TikTok*, 85 F.4th at 358 (emphasis added). But to be clear, the ability to access electronic documents in a forum still does have a bearing

on the analysis. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) ("[W]hile electronic storage of documents makes them more widely accessible than was true in the past, that does not make the sources-of-proof factor irrelevant.") (citation omitted).

Here, even assuming the weight to be accorded to the ability to access documents in the Sherman Division was slight, it was dispositive because the Marshall Division had "nothing on the other side of the ledger" as it relates to access to evidence or ease of access to evidence. *Apple*, 2022 WL 1196768, at *4. The district court thus should have found that the Sherman Division had "a comparative advantage with regard to the ease of access to the sources of proof located within that district." *Id.*

The district court also erred by chiding SAP for "fail[ing] to identify any Texas-based servers." Appx0004. A "district court err[s] by analyzing only the location of servers where documents are stored, rather than also considering the location of document custodians and location where documents are created and maintained." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). The court completely failed to address SAP's custodians in the Sherman Division and the ease that all the witnesses—including Valtrus's witnesses—would have when

accessing documents in the Sherman Division as opposed to the Marshall Division where access was nonexistent.

Finally, the district court erred by weighing against transfer the fact that SAP "stores and maintains documents relating to the design and development of the Accused Products in Germany and India." Appx0004. This was error because "the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer." *Juniper*, 14 F.4th at 1321 (citations omitted). Again, per this Court, the focus should have been on the Marshall Division and the Sherman Division, and "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).

In short, by ignoring the relative ease of access, the district court "failed to ask the correct question, and in doing so, improperly discounted the relative convenience of the transferee venue with regard to sources of proof." *Apple*, 2022 WL 1196768, at *4. "The court therefore erred in not weighing this factor in favor of transfer." *Id*.

**B.    The court legally erred in finding that SAP's witnesses in the Sherman Division were "irrelevant" because they were not witnesses "for trial."**

The district court also erred as to factor (3): "the cost of attendance for willing witnesses." *TikTok*, 85 F.4th at 361. The district court found this factor was neutral because the proximity to the Marshal Division for SAP's two willing witnesses in the Sherman Division—Tumu and Padakal—was "irrelevant." Appx0008. According to the district court, "this factor concerns willing witnesses '*for trial*'" and "Defendants never state[d] that" Tumu or Padakal "will be witnesses *for trial*." *Id.* The court also found that SAP's witnesses were irrelevant because it felt that SAP's descriptions of these witnesses "impermissibly invite[d] the Court to guess whether they do or do not have relevant knowledge." Appx0007.

Both parts of this analysis were legally erroneous.

First, there is no legal basis to treat SAP's witnesses in the Sherman Division as "irrelevant" because of the district court's belief that this factor concerns willing witnesses '*for trial*.'" Appx0008. The Fifth Circuit has never required parties to identify specific witnesses they will call at trial. Rather—for obvious reasons since motions to transfer are typically filed at the outset of proceedings—the focus has always been on

costs to "potential witnesses." *See Volkswagen*, 545 F.3d at 317; *see also, e.g.*, *In re Haptic, Inc.*, No. 2024-121, 2024 WL 3159288, at *2 (Fed. Cir. June 25, 2024); *Microsoft*, 2023 WL 3861078, at *1.

The "for trial" language comes from the Fifth Circuit's rule that the costs to witnesses are examined on a sliding scale "[w]hen the distance between an existing venue *for trial* . . . and a proposed venue under § 1404(a) is more than 100 miles." *TikTok*, 85 F.4th at 361. But that does not suggest that the only relevant costs are those incurred for traveling to trial. Indeed, the Fifth Circuit has explained that the costs for traveling to evidentiary hearings are also a concern. *See Clarke*, 94 F.4th at 514 ("Given the possibility of evidentiary hearings, we must assess . . . the cost of attendance for willing witnesses."). And it should go without saying that not all witnesses who take part in an evidentiary hearing will be witnesses "for trial," even though, like a trial witness, "[t]estifying [will] impose[] myriad external costs on [these] witnesses." *See id.*

Indeed, if the district court's analysis were correct, it would impose a near-impossible burden for any defendant to satisfy at the outset of a case; parties simply may not know at that stage what witnesses would appear for trial. This was exemplified by the testimony of SAP's witness,

Pandya, who explained that, at such an early stage of the litigation, SAP *could not know* who it would call at trial. *See* Appx0593.

The district court also erred in finding that SAP "impermissibly invite[d] the Court to guess whether [the witnesses it identified] do or do not have relevant knowledge." Appx0007.

Of course, SAP did have to explain *why* its identified witnesses were relevant; Fifth Circuit law focuses on "relevant witnesses." *TikTok*, 85 F.4th at 361; *see also Clarke*, 94 F.4th at 514. But SAP did just that, explaining both *why* and *how* Tumu and Padakal had relevant information in SAP's briefing on the motion to transfer, in Pandya's declaration, and in Tumu's and Padakal's own testimony. *See* Appx00104; Appx0111; Appx0129–0130; Appx0688–0689; Appx0693.

Thus, SAP was not "invit[ing] the Court to guess" about anything; it was just noting that these witnesses had relevant knowledge that was *potentially* going to be useful in the case. That is not "impermissibl[e]." Appx0007. It is precisely what the federal rules required from SAP at the outset of a case. *See, e.g.*, Fed. R. Civ. P. 26(a)(1), (g)(1); *see also* Fed. R. Civ. P. 26, Advisory Comm. Notes 1993 Amend. ("The rule does not demand an exhaustive investigation at this stage of the case, but one that

is reasonable under the circumstances, focusing on the facts that are alleged with particularity in the pleadings. The type of investigation that can be expected at this point will vary based upon such factors as the . . . availability of *potentially relevant witnesses and documents*[.]") (emphasis added). Accordingly, disregarding SAP's witnesses in the Sherman Division as "irrelevant" was clear error.

> ### C.    The court erred in refusing to give "too much significance'" to the inconvenience faced by the bulk of relevant witnesses in from Europe.

Beyond its erroneous analysis of SAP's witnesses, the district court also found that, "on balance," "the Sherman Division is not clearly more convenient than the Marshall Division" because witnesses outside of the Sherman Division—in Houston, Atlanta, California, and overseas in Europe—could "fly to the Shreveport airport" and "drive to the Marshall Division." Appx0009. Likewise, the district court declined to give "too much significance'" to witnesses' travel inconvenience since they are already "traveling a significant distance," and speculated that "the likely cost of food and lodging is less in the Marshall Division than the Sherman Division," which it felt would balance out the fact (demonstrated by SAP

with evidence) "that flying to DFW is cheaper than flying to the Shreveport airport." *Id.*

This analysis was flawed too.

First, the district court erred by failing to account for the impact of the additional distance driving to the Marshall Division as opposed to flying to Dallas, which required less travel time. Appx0843; Appx0845–0847. The Fifth Circuit has been clear that "the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *TikTok*, 85 F.4th 361. And the flight to Shreveport, plus the drive to Marshall necessarily meant additional distance. Appx0277–0279; Appx0649–0650; Appx0843. That, in turn, "means additional travel time," "meal and lodging expenses," and "time witnesses must be away from their regular employment." *TikTok*, 85 F.4th at 361 (quotations and citation omitted). The district court erred in not recognizing as much.

Likewise, the district court erred by deciding not to give "too much significance'" to the travel inconvenience of SAP's witnesses in Europe and California for the same reasons, and because the court said they are already "traveling a significant distance." Appx0009.

The Fifth Circuit has never said that witnesses overseas or further away get less significance because they are already traveling a significant distance. To the contrary, the Fifth Circuit has said the exact opposite: that the inconvenience factor "increases in direct relationship to the additional distance to be traveled." *TikTok*, 85 F.4th 361. So if anything, the court should have been *more* attuned to the costs to these witnesses. And as discussed, it would be cheaper and easier for these witnesses to travel to the Sherman Division through the Dallas Airport than it would be to travel to the Marshall Division through the Shreveport Airport. Appx0111; Appx0277–0279; Appx0786; Appx0815–0847.

"The district court committed a clear abuse of discretion in concluding otherwise." *TikTok*, 85 F.4th at 362.

## CONCLUSION AND RELIEF SOUGHT

For these reasons, this Court should issue a writ of mandamus vacating the district court's order denying SAP's motion to transfer and directing that court to transfer this case to the Sherman Division of the U.S. District Court for the Eastern District of Texas. And to discourage gamesmanship, the Court should also direct that a judicial officer in the

Sherman Division be randomly assigned to the matter as though the case

had been originally filed in the Sherman Division.

Dated: February 4, 2025                    Respectfully submitted,

                                        By: */s/ Katherine K. Vidal*
                                            Katherine K. Vidal
Thomas M. Melsheimer              WINSTON & STRAWN LLP
M. Brett Johnson                  255 Shoreline Drive
Michael A. Bittner                Suite 250
Thanh D. Nguyen                   Redwood City, CA 94065
WINSTON & STRAWN LLP              (650) 858 -6500
2121 N. Pearl Street              KVidal@winston.com
Suite 900
Dallas, TX 75201                  Sean H. Suber
(214) 453-6500                    WINSTON & STRAWN LLP
TMelsheimer@winston.com           35 West Wacker Drive
MBJohnson@winston.com             Chicago, IL 60601
MBittner@winston.com              (312) 558-5600
TDNguyen@winston.com              SSuber@winston.com

                *Counsel for Petitioners*
                *SAP America, Inc. and SAP SE*

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Rule 21(d)(1) of the Federal Rules of Appellate Procedure. The body of the petition contains 7,198 words, excluding the portions exempted by rule.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure, because it has been prepared in a proportionality spaced typeface using Microsoft Word in New Century Schoolbook 14-point font.

Dated: February 4, 2025          Respectfully submitted,

By: */s/ Sean H. Suber*
Sean H. Suber

*Counsel for Petitioners*
*SAP America, Inc. and SAP SE*

FORM 31. Certificate of Confidential Material

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 25-\_\_\_\_\_

**Short Case Caption:** In Re: SAP America, Inc.

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains __14__ number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 02/04/2025

Signature: /s/ Sean H. Suber

Name: Sean H. Suber

## CERTIFICATE OF SERVICE

I certify that on February 4, 2025, I caused a paper copy of this document to be sent by express carrier to lead counsel for Respondents Valtrus Innovations Ltd. and Key Patent Innovations, Inc. at the following address:

Matthew G. Berkowitz
Richman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood City, CA 94065

I further certify that I caused courtesy electronic copies of this document to be sent to counsel above and to the following additional counsel of record for Respondents in the district court:

Patrick Colsher, pcolsher@reichmanjorgensen.com
Navid C. Bayar, nbayar@reichmanjorgensen.com
Savannah Carnes, scarmes@reichmanjorgensen.com
Philip J. Eklem, peklem@reichmanjorgensen.com
Khue V. Hoang, khoang@reichmanjorgensen.com
Andrea L. Fair, andrea@wsfirm.com
Claire Abernathy Henry, claire@wsfirm.com

I also certify that I caused a paper copy of this document to be sent by express carrier to the presiding district judge at the following address:

Hon. J. Rodney Gilstrap
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, Texas 75670

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February 4, 2025        Respectfully submitted,

By: */s/ Sean H. Suber*
Sean H. Suber

*Counsel for Petitioners*
*SAP America, Inc. and SAP SE*